**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LEROY PENA** | § | Civil Action No. _____ |
| | § | |
| Plaintiff, | § | **3-22CV0987-N** |
| | § | |
| v. | § | |
| | § | |
| **DALLAS POLICE ASSOCIATION** | § | |
| **& THE CITY OF DALLAS** | § | |
| | § | **JURY TRIAL DEMANDED** |
| Defendants. | § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff, Leroy Pena ("Pena"), brings this action against Defendants Dallas Police Association ("DPA") and The City of Dallas (the "City"), for violating the laws of the United States of America, and alleges the following:

### I. INTRODUCTION

1. This action seeks to recover equitable relief, compensatory and punitive damages, liquidated and unliquidated damages, front and back pay, exemplary damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interests for violations of Plaintiff's rights under Title VII of the Civil Rights of 1964, as amended and §§1981, 1983.

2. Plaintiff demands a jury trial on all issues triable to a jury.

### II. PARTIES, JURISDICTION, AND VENUE

3. Plaintiff, Leroy Pena ("Pena") is a citizen of the United States of America and the State of Texas residing at 7108 Canyon Ridge Dr., Dallas, TX 75227.

4. Defendant, Dallas Police Association ("DPA") is a union that may be served by and through

Plaintiff's Original Complaint                                                                                                              1

its current president Michael J. Mata and/or its registered agent Bob Gorsky at 12001 N. Central Expressway, Suite 650, Dallas, TX 75243 or 1412 Griffin Street E, Dallas, TX 75215-1101 or wherever it might be found.

5. Defendant, The City of Dallas, Texas, is a municipal corporation under the laws of the State of Texas, located within Dallas County, Texas. The City of Dallas may be served by and through the mayor, clerk, secretary or treasurer pursuant to Texas Civil Practice & Remedies Code section 17.024(b) at Dallas City Hall, 1500 Marilla Street, Dallas, Texas 75201 or wherever it may be found.

6. This Court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §1331 and 28 U.S.C. §1367. This action arises under, and is brought pursuant to, the Constitution and laws of the United States.

7. Venue is proper in the Northern District of Texas, pursuant to 42 U.S.C. § 2000e(5) because it is the district in which the unlawful employment practice was committed, the judicial district in which the employment records relevant to such practice are maintained and administered, and the judicial district in which the aggrieved person worked or would have worked but for the alleged unlawful employment practice. Venue is further property under 28 U.S.C. §1391(b) because the substantial part of the events or omissions giving rise to this cause of actions occurred in the Northern District of Texas.

### III. NATURE OF THE CLAIM & CONDITIONS PRECEDENT

8. All conditions precedent to filing this cause of action have been met. Plaintiff was issued a Right to sue letter on February 2, 2022 and therefore must file his lawsuit in court within ninety (90) days thereafter on or before May 3, 2022 which he has done.

9. Pena seeks actual and compensatory damages based on the City's discrimination, harassment and retaliation against him based on his color, sex (including orientation), national origin, and retaliation under Title VII, §1981 and §1983.

10. Pena seeks actual and compensatory damages based on the DPA's discrimination, harassment and retaliation based on his sex, sex orientation, color and national origin (Mexican) under Title VII and §§ 1981, 1983.

## IV. FACTS

11. At all times relevant to this case, the City of Dallas is a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b).

12. The Dallas Police Association ("DPA") is a labor organization covered under Title VII.

13. This claim is brought pursuant to Title VII and §§ 1981, 1983.

14. At all times relevant to this case, the City employed more than fifteen (15) employees.

15. The amount in controversy exceeds $75,000.

16. At all times relevant to this case, Plaintiff was an employee of the City and a paying member of the DPA, a labor organization. .

17. Plaintiff was employed by Defendant within the applicable statute of limitations.

18. On or about July 7, 2000, Plaintiff began working for the City of Dallas and in particular the Dallas Police Department as a Police Officer.

19. Throughout his employment, Plaintiff was a full-time employee of the City.

20. Throughout his employment, Plaintiff was a paying member of DPA.

21. Plaintiff is a brown, Hispanic, male (heterosexual) from Mexico.

22. Plaintiff was an excellent performer and received good performance reviews until the pattern of discrimination and harassment began with his boss, Sergeant Codero ("Codero").

23. Upon becoming Pena's supervisor, Codero would go out of his way to daily make degrading and discriminatory comments for the exclusive purpose of harassment including but not limited to comments regarding Plaintiff's sex orientation, his sex organs, his wife's infidelity and characterizing her as a "slut" (which were both untrue), his motorcycle being a "pussy bike" (March

2018), and micromanaging Plaintiff's workload by resending work to Plaintiff for minor issues and being hyper-critical of Plaintiff's work in comparison with white and female employees.

24. Codero would deny Plaintiff overtime hours while freely granting them to white and female officers. He marked minority officer's reports only with red ink to shame them openly and kept equipment from minority detectives that was necessary and normal to do their jobs.

25. Codero would never correct female or white officers in the same manner as Pena which was openly in front of peers and in a shaming manner.

26. On or about April 2019, after a long time period of this harassment which Plaintiff hoped would go away, Plaintiff finally reported Codero's behavior to Internal Affairs and other management.

27. In addition, around the same time, Codero started mental health counseling due to the stresses put upon him from Codero's treatment and the lack of support from the City.

28. Plaintiff complained about his treatment from Codero on numerous occasions both formally and informally to multiple levels of the City's Police Department and instead of being met with understanding and an appropriate investigation, he immediately became the target of retaliation from the department.

29. He was written up and warned several times about illegitimate items even within the very meetings to address Codero's discrimination, harassment and retaliation.

30. He was taken off his job as detective and put on patrol.

31. Plaintiff and Codero were asked to meet with Lieutenant Gallagos to discuss the matter and in the meeting Codero clearly misrepresented his comments. The result of this meeting was Gallagos stating that he found that Codero did make inappropriate harassing comments and that he would "take action."

32. Instead of Codero being demoted or moved away from Pena, his harassing comments and discriminatory behaviors increased against Pena as he was emboldened.

33. On or about June 25, 2019, Plaintiff filed his first formal complaint against Codero for his daily harassment and discriminatory and retaliatory behaviors.

34. During this administrative investigation it was found that Codero had, in fact, made inappropriate comments and Codero was simply issued a documented write-up but no further remedy was offered to stop the discrimination, harassment or retaliation against Pena.

35. The City's lack of true remedial action only increased retaliation against Pena by Codero.

36. Codero would complain about the retaliation to management at the City but all levels would only respond that Codero is simply complaining due to Codero's appropriate "discipline" of Pena due to his job performance.

37. Again, Pena worked for the City since 2000 and had excellent performance reviews until Codero started his pattern of harassment and discrimination and the City began to retaliate against Pena for making a complaint on every level.

38. Pena began being written up on a consistent and regular basis starting only sixty (60) days after reporting his discrimination on a formal basis.

39. Pena was even placed on administrative leave in February 2020 by Lieutenant Gallegos in retaliation for making his complaints which Pena indicated in his response to the decision.

40. In fact, Pena had gone above and beyond to service a citizen's problem and did such a great job that the citizen had come back and given him a gift of a watch which Pena accepted thinking it was cookies. He only later found out it was a watch which he attempted to return to the citizen and was assured it was not a violation by his department.

41. As a reward for this "above and beyond" display of concern and help to the public, Codero was rewarded by being placed on administrative leave for accepting a gift.

42. In addition to the Internal Affairs complaint, he complained to higher management in the City, Plaintiff also attempted to file a union grievance through the DPA.

43. On several occasions, Pena consulted Michael Mata as his union representative to file a grievance and obtain legal assistance regarding his discrimination, harassment and retaliation.

44. Mata told Pena that "Leroy, even though you're in the right sometimes you have to get fucked by the city."

45. Mata then outright refused to file a grievance for Pena or provide legal services despite the grievous retaliatory behavior on every level at the City supported by clear documented evidence in the City's own investigative reports.

46. Pena was further denied funding of legal services for his matter by the DPA based upon his race, sex, sex orientation, color and national origin (Mexico).

47. DPA continued the pattern of retaliation that the City had started.

48. Pena was a member of the DPA during the time of his discrimination, harassment and retaliation by the City.

49. Pena approached the DPA for legal assistance but was instead further retaliated against due to his complaints and not provided any reasonable help as was the DPA's function.

50. Plaintiff was refused his grievance representation and legal assistance which was DPA's primary function.

51. The City refused to properly remedy the situation and therefore on or about February 7, 2020, Plaintiff filed an EEOC complaint against both the City and DPA.

52. Plaintiff has suffered grievous damages as a result of the actions of the City and the DPA in violation of Title VII and §§1981, 1983.

### V. CAUSES OF ACTION

**COUNT ONE: TITLE VII – RACE, COLOR, NATIONAL ORIGIN AND SEX DISCRIMINATION AND HARASSMENT AND RETALIATION BY THE CITY**

53. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

54. Plaintiff is a Hispanic, brown, heterosexual male from Mexico.

55. Because Plaintiff's race (Hispanic), color (brown), national origin (Mexico) and sex (heterosexual male) he belongs to several groups of persons that 42 U.S.C. § 2000e, *et seq.* (Title VII of the 1964 Civil Rights Act, as amended) intended to protect against discrimination and harassment in terms and conditions of employment.

56. By the above-described acts, the City discriminated against and harassed Plaintiff because of his race, color, national origin and sex, by Codero's daily harassing comments and discriminatory actions against Pena as his subordinate as described above.

57. The City by and through Codero made harassing comments that were both severe and pervasive as they occurred on a daily basis and were such an egregious character and nature as to qualify as legitimate legal harassment creating a hostile working environment based on race, sex, color and national origin.

58. Further, the City acted with reckless indifference to Plaintiff's federally protected rights.

59. At all relevant times, Plaintiff was qualified for his position with the City, and his job performance was excellent until the City began a coordinated campaign to discriminate and harass him.

60. Plaintiff was treated differently than others outside his protected classes, and he suffered discrimination because of his race, color, national origin and sex.

61. Because of the City's discriminatory actions, Plaintiff has suffered adverse employment actions including being demoted, placed on less desirable tasks and written up falsely. Plaintiff also suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in all probability, in the future.

62. In addition, Plaintiff avers that the City's unlawful and discriminatory actions on account of his race, national origin, color, and sex violates the provision of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, paragraph 703(a), justifying an award *inter alia*, of compensatory and punitive damages against the City..

63. Such discrimination has caused Plaintiff to suffer damages of severe emotional distress and lost wages. Such discrimination was committed with malice and reckless indifference to the rights of Plaintiff to be treated as a member of several protected classes, and to the intent of the statute to protect victims from such actions. Such malicious or reckless indifference warrants punitive damages as provided in Title VII of the Civil Rights Act as amended by the Civil Rights Act of 1991.

64. In addition to illegal discrimination and harassment, the City retaliated against Pena for making his reports of discrimination and harassment and initiating investigations.

65. The City's retaliatory behavior was much wider in scope as Pena indicated in all his writings that he believed he was being retaliated against and formally reported the retaliation via the chain of command.

66. All Pena's reports of retaliation were met with more retaliation by even more senior officers at the City.

67. He was systematically written-up, scolded, and blamed as the victim of discrimination and harassment.

68. The City attempted and did create a paper trail to try to desperately establish that Pena was simply a bad employee after almost twenty (20) years of excellent performance.

69. The City through numerous officers, including Codero, took numerous actions as specified above to retaliate against Pena.

70. The City's own interviews with officers regarding some of Codero's discrimination and harassment reveal that Codero made the discriminatory and harassing comments and within the same report attempts to scold Pena.

71. As a result of the City's discriminatory and retaliatory actions, Plaintiff has been denied opportunities to which he was entitled and such benefits and privileges that he would have received if he had not been intentionally discriminated against by the City. Plaintiff is now suffering and will

continue to suffer past and future pecuniary loss, emotional anguish, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses. This irreparable injuries and monetary damages are the result of Defendants' discriminatory practices and they will continue unless and until this Court grants relief.

### COUNT TWO: TITLE VII RETALIATION BY THE DPA

72. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

73. Plaintiff sought assistance from the DPA regarding his matter involving discrimination, harassment and retaliation by the City as described above.

74. DPA responded by making statements that discrimination and harassment and retaliation by the City is normal and failing to uphold the stated goal and mission of the DPA which is to assist it's officers with legal issues.

75. When Plaintiff provided evidence of investigations and clear retaliation, harassment, and discrimination on the part of the City to the DPA, then the DPA retaliated against Plaintiff by refusing to respond to Plaintiff and more importantly failing to take up his case based upon his formal reports of discrimination, harassment and retaliation against the City.

76. As a result of the DPA's discriminatory and retaliatory actions, Plaintiff has been denied opportunities to which he was entitled and such benefits and privileges that he would have received if he had not been intentionally discriminated against by the City. Plaintiff is now suffering and will continue to suffer past and future pecuniary loss, emotional anguish, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses. This irreparable injuries and monetary damages are the result of Defendants' discriminatory practices and they will continue unless and until this Court grants relief.

### COUNT THREE: SECTIONS 1981 AND 1983 VIOLATIONS: THE CITY

77. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

78. Plaintiff's race is Hispanic, Plaintiff's national origins are from Mexico and Plaintiff has darker skin tone than Caucasians which are all protected groups that the Title VII and §§ 1981, 1983 are intended to protect.

79. As such, Pena is a member of an ethnic group which is, and is commonly perceived as being, ethnically distinct.

80. At all times relevant to this case, Pena was qualified for his position that he held during his employment with the City.

81. The City discriminated against, harassed and retaliated against Pena because of his race, national origin, and color.

82. The City subjected Pena to different terms, conditions and privileges of employment because of his race, national origin, and color in violation of Title VII, §§ 1981, 1983 for which Plaintiff requests compensatory and punitive damages and all other damages to which they are entitled.

83. The City discriminated against Plaintiff because of race, national origin, and color by tolerating and failing to take affirmative action to correct unlawful employment practices, by discriminating and harassing Plaintiff with respect to the terms, conditions and privileges of his employment because of his race, national origin and color through denial of his employment rights and benefits, and, all in violation of 42 U.S.C. §§ 1981, 1983 et seq.

84. Plaintiff engaged in protected activity while working at the City by reporting harassment and discrimination to a supervisor.

85. The City was aware of Plaintiff's protected activity and discriminated and retaliated against Plaintiff based on his engaging in such protected activity and instead increased it's clear pattern of discrimination, harassment and retaliation.

86. Further, the City acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiffs.

87. As a result of the City's discriminatory and retaliatory actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in all probability will continue to suffer in the future.

**COUNT FOUR: SECTIONS 1981 AND 1983 VIOLATIONS: DPA**

88. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

89. Plaintiff's race is Hispanic, Plaintiff's national origins are from Mexico and Plaintiff has darker skin tone than Caucasians which are all protected groups that the Title VII and §§ 1981, 1983 are intended to protect.

90. As such, Pena is a member of an ethnic group which is, and is commonly perceived as being, ethnically distinct.

91. At all times relevant to this case, Pena was qualified for his position he held during his membership with the DPA.

92. DPA discriminated against, harassed and retaliated against Pena because of his race, national origin, and color.

93. DPA subjected Pena to different terms, conditions and privileges of employment because of his race, national origin, and color in violation of Title VII, §§ 1981, 1983 for which Plaintiff requests compensatory and punitive damages and all other damages to which they are entitled.

94. DPA discriminated/retaliated against Plaintiff because of race, national origin, and color by failing to provide the legal assistance that is required as part of its role to members and by continuing the very discrimination and retaliation against Plaintiff with respect to the terms, conditions and privileges of his employment with the City and membership in the DPA because of his race, national origin and color through denial of his employment rights and benefits, and, all in violation of 42 U.S.C. §§ 1981, 1983 et seq.

95. Plaintiff engaged in protected activity while a member of the DPA and an employee of the City by reporting harassment and discrimination and retaliation on several occasions on multiple levels through multiple avenues.

96. DPA was aware of Plaintiff's protected activity and discriminated and retaliated against Plaintiff based on his engaging in such protected activity.

97. Further, DPA acted with malice or, in the alternative, with reckless indifference to the federally protected rights of Plaintiffs.

98. As a result of DPA's discriminatory and retaliatory actions, Plaintiff has suffered loss of wages, both in the past and in the future, as well as emotional pain, mental anguish, suffering, inconvenience, loss of enjoyment of life in the past, and in all probability will continue to suffer in the future.

## VI. CAUSATION AND DAMAGES

99. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

100. Both Defendants acted with the intent of injuring Plaintiff. The actions of both Defendants were taken and carried out with actual malice, and with the desire to inflict injury and damage upon me without any cause or excuse.

101. As a direct and proximate result of Defendants' above-mentioned legal violations, Plaintiff has suffered damages, including but not limited to loss of earnings and earning capacity, significant emotional distress, damage to his good name and reputation, loss of pension and fringe benefits, loss of a beneficial economic relationship with Defendant, and loss of the ordinary pleasures of everyday life, including a right to pursue gainful occupation of choice.

102. As a direct result of Defendants' discrimination, harassment and retaliation against Plaintiff, Plaintiff has suffered mental anguish and emotional distress.

103. Accordingly, Plaintiff is entitled to recover punitive damages under Title VII.

## VII. JURY DEMAND

104. Plaintiff requests a trial by jury.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment be entered in his favor awarding him judgment as follows:

105. An order out of this Court reinstating Plaintiff in a position comparable to that which he formerly held or should have held with Defendant and such other equitable relief necessary to end the discriminatory, unfair, and illegal practices of Defendant;

106. An injunction against future violations;

107. An award of back pay, front pay and lost fringe benefits, including damages for lost earnings capacity;

108. Expert witness fees incurred by Plaintiff in the preparation and prosecution of this action;

109. Emotional distress and mental anguish;

110. Compensatory damages in whatever amount Plaintiff is found to be entitled, together with interest, costs and attorney's fees, under Title VII and 2000e-2(a), and §§ 1981, 1983;

111. Punitive damages against Defendant, entitled under Title VII and 2000e-2(a), and §§ 1981, 1983;

112. Pre-judgment interest at the highest rate allowed by law;

113. Post-judgment interest at the highest rate allowed by law;

114. All costs of court, and

115. Such other and further relief at law or in equity, to which Plaintiff may be justly entitled.

Dated: May 3, 2022

Respectfully submitted,

*[signature: Leroy Pena]*

Leroy Pena, *Pro Se*
Lpena7914@gmail.com
7108 Canyon Ridge Dr.
Dallas, Texas 75227
(469) 450-1932 (Telephone)
*Pro Se Plaintiff (drafted with assistance of counsel)*

JS 44 (Rev. 10/20) TXND (10/20)

# CIVIL COVER SHEET

3-22CV0987-N

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**ORIGINAL**

**RECEIVED MAY - 3 2022**
**CLERK U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**

## I. (a) PLAINTIFFS
Leroy Pena

**DEFENDANTS**
Dallas Police Association and The City of Dallas

**(b)** County of Residence of First Listed Plaintiff: **Dallas**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: **Dallas**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Pro Se

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander |  | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability / [ ] 368 Asbestos Personal Injury Product Liability |  | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine |  | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act |  | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |  | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/Exchange |
|  |  | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** |  | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee |  | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [x] 442 Employment / [ ] 510 Motions to Vacate Sentence |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/Accommodations / [ ] 530 General |  | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 535 Death Penalty | **IMMIGRATION** |  |  |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 448 Education / [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions |  |  |
|  | [ ] 555 Prison Condition |  |  |  |
|  | [ ] 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [ ] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
**Title VII, Sections 1981 and 1983**

Brief description of cause:
**Discrimination, Harassment and Retaliation based on race, color, national origin, and sex (including orientation)**

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____